IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HILFIKER SQUARE, LLC,** an Oregon
limited liability company,

                      Plaintiff,

   v.

**THRIFTY PAYLESS, INC.,** a California
corporation,

                      Defendant.

No. 6:16-cv-01885-MC

**ORDER ON FEES & COSTS**

**MCSHANE, Judge**:

The Court entered summary judgment for Defendant, Thrifty Payless, Inc. ("Rite Aid"), on April 24, 2018. Judgment, ECF No. 58. Rite Aid now moves for its fees and costs pursuant to Section 6.10 of the Declaration of Restrictions and Grant of Easements ("Declaration") at issue in the present action. Def.'s Mot. Fees & Costs, ECF No. 49. Plaintiff, Hilfiker Square, LLC ("Hilfiker"), has filed a memorandum in opposition to Rite Aid's motion, arguing that Rite Aid cannot benefit from the fee-shifting provision in Section 6.10 or, in the alternative, that the requested fees are unreasonable. Pl.'s Mem. Opp'n, ECF No. 52. Because Rite Aid is entitled to its attorneys' fees and costs under Section 6.10, but some of the requested rates and hours are unreasonable, Rite Aid's motion is granted in part and denied in part.[1-2]

---

[1] At the time it was filed, Rite Aid's motion, at least with respect to attorneys' fees, was premature because the Court had yet to enter a judgment in the case. *See* Fed. R. Civ. P. 54(d)(2)(B) (directing that a motion for fees must "*specify the judgment* . . . entitling the movant to the award"). That error, however, is harmless and will not prejudice Hilfiker because no additional costs or fees were incurred during the intervening period. Since an early motion is not inconsistent with the purpose of Rule 54(d)(2)(B), which primarily aims to ensure that an opposing party has notice of a claim before the time for appeal has elapsed, it would be a waste of time and resources to require that Rite Aid renew its motion based on such a technicality.

[2] The parties' request for oral argument is denied as unnecessary.

Page 1 – ORDER ON FEES & COSTS

**DISCUSSION**

There are currently three issues before the Court: (1) whether Rite Aid is entitled to its attorneys' fees under the Declaration, (2) whether, assuming Rite Aid is entitled to its attorneys' fees, the requested fees are reasonable, and (3) whether Rite Aid is entitled to its costs under the Declaration or federal law. The Court addresses each issue in turn.[3]

I. Availability of Attorneys' Fees.

Rite Aid argues that an award of attorneys' fees is appropriate based on the fee-shifting provision contained in Section 6.10 and under Or. Rev. Stat. § 20.096(1). Def.'s Mot. Fees & Costs 3-4. Since Or. Rev. Stat. § 20.096(1) merely provides that, in an action on a contract, the prevailing party is entitled to attorneys' fees under an otherwise non-reciprocal fee-shifting provision, the only issue is whether Section 6.10 allows for the award of attorneys' fees.

Section 6.10 of the Declaration, titled "Attorneys' Fees," states that, "[i]n the event any entity which is entitled to the benefits of this Declaration brings an action . . . to enforce or interpret this Declaration, the prevailing party in such action shall be entitled to recover from the other party is reasonable attorneys' fees and all court costs." Rubin Decl., Ex. 6 § 6.10. Rite Aid asserts that, because Hilfiker is "an entity entitled to the benefits" of the Declaration and is the party which initiated the present action for breach of contract, Section 6.10 allows it, as the prevailing party, to recover fees and costs. Def.'s Mot. Fees & Costs 3-4. The Court agrees.

Hilfiker nevertheless contends that, because Rite Aid previously argued that Hilfiker was not "entitled to the benefits" of the Declaration, it is now "estopped" from asserting the inverse. Pl.'s Mem. Opp'n 2. Although Hilfiker is correct that the issue has already been litigated, it omits that the Court rejected Rite Aid's argument and specifically held that Hilfiker is a party to

---

[3] Since this is a diversity action governed by Oregon law, the availability and amount of fees are both governed by Oregon law. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009)

Page 2 – ORDER ON FEES & COSTS

the contract and therefore entitled its benefits. Opinion & Order 5-6. Unless Hilfiker is suggesting that the Court is estopped from relying on its own holding, Rite Aid's unsuccessful argument at summary judgment is irrelevant. *See also* Or. Rev. Stat. § 20.083 ("A prevailing party in a civil action relating to an express or implied contract is entitled to an award of attorney fees that is authorized by the terms of the contract or by statute, even though the party prevails by reason of . . . a claim or defense asserting that the contract is unenforceable."). Hilfiker is an "entity entitled to the benefits" of the Declaration and therefore subject to Section 6.10.

Hilfiker also argues that, even if it is an entity covered by Section 6.10, the present action was for breach of an implied duty, not one to "enforce or interpret" the specific terms of the Declaration, and therefore falls outside the scope of Section 6.10. Pl.'s Mem. Opp'n 2. This argument is, at best, disingenuous, as Hilfiker's Complaint, which contained a single claim for "breach of contract," alleged that Hilfiker was "entitled to recover its reasonable costs and attorney fees in connection with this matter" because "Section 6.10 of the Declaration provides for an award of attorney fees in the event of litigation arising from the Declaration." Complaint ¶ 15, ECF No. 1-1; *see also* First Amended Answer 6, ECF No. 20 (admitting ¶ 15).

Setting aside Hilfiker's earlier statement, the present action is plainly one to "enforce or interpret" the Declaration. The analysis to determine whether a contract contains an implied covenant of good faith and fair dealing, as well as the related analysis to determine the contours of any such implied covenant, is inextricably linked to a contract's specific terms. The Court's Opinion & Order, which carefully walks through the Declaration's terms to find both that the Declaration contains an implied duty of good faith and that the duty does not obligate Rite Aid to modify the Declaration, clearly reflects this fact. *See* Opinion & Order 7-11. Because, under

Section 6.10, Hilfiker is both a covered beneficiary and the plaintiff in a covered action, Rite Aid is entitled to its reasonable costs and attorneys' fees pursuant to Section 6.10.

II. Reasonableness of Attorneys' Fees.

Rite Aid moves for a total of $126,305.50 in attorneys' fees. Def.'s Mot. Fees & Costs 6. Oregon courts generally award attorney fees based on the lodestar method, although there is room for adjustment based on the factors set forth in Or. Rev. Stat. § 20.075. *See generally Strawn v. Farmers Ins. Co. of Or.*, 297 P.3d 439, 447-48 (Or. 2013). Under the lodestar method, courts multiply the reasonable hourly rate for each timekeeper by the reasonable number of hours the timekeeper worked on the case. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Non-clerical work performed by paralegals and law clerks is also recoverable as attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

**A. Rates.**

Hilfiker argues that the attorney and paralegal billing rates sought by Rite Aid are unreasonable. Pl.'s Mem. Opp'n 2-3. A reasonable billing rate is determined based on the "prevailing market rate" in the relevant community. *Camachco v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "The burden is on the [fee applicant] to produce evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984). To ascertain the prevailing market rate, courts in the District of Oregon use the most recent Oregon State Bar Economic Survey as an initial benchmark. LR 54-3. The

market rate may also reflect, *inter alia*, the novelty and difficulty of the legal question, the requisite skill to perform the legal service properly, and the results obtained. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002).

    i.    *Attorneys*.

Attorney Bruce Rubin seeks an hourly rate of $365. Def.'s Mot. Fees & Costs 5. Hilfiker does not object to this rate. Mr. Rubin, a partner at Miller Nash Graham & Dunn, has practiced law for over 30 years. Sinnott Decl., Ex. 1. In the most recent Oregon State Bar Economic Survey, the median hourly rate in Portland, Oregon for a private practice attorney with over 30 years' experience was $425. Among all private practice attorneys working specifically on defense-side civil litigation in Portland, Oregon, the median hourly rate was $325 and the 75th percentile rate was $425. The rate sought by Mr. Rubin falls well below the median rate for one with his level of experience and the 75th percentile rate in the relevant practice area (i.e., defense-side civil litigation). In addition, during the period covered by the present dispute, Mr. Rubin's standard hourly rate—$550 to $575—was significantly higher than his requested rate. Sinnott Decl. ¶ 3. The Court therefore finds that Mr. Rubin's $365 hourly rate is reasonable.

Attorney Jeanne Sinnott also seeks an hourly rate of $365. Def.'s Mot. Fees & Costs 5. Hilfiker does not object to this rate. Ms. Sinnott is a partner at Mill Nash Graham & Dunn, but was admitted to practice within the past 11 years. Sinnott Decl. ¶ 2. In the most recent Oregon State Bar Economic Survey, the median hourly rate in Portland, Oregon for a private practice attorney with between 10 and 12 years' experience was $300 and the 75th percentile rate was $340. Although Ms. Sinnott normally charged an hourly rate between $390 and $420 during the relevant period, her requested rate is still above both the 75th percentile for someone with her level of experience and the median rate of $325 for her practice area. Her requested hourly rate

is therefore out of step with the prevailing market rate. Nevertheless, because Ms. Sinnott specializes in the type of commercial contract dispute at issue in the present action and commands a higher billing rate as a partner, an upward departure to the 75th percentile for private practice attorneys with comparable experience is appropriate. *See* Sinnott Decl., Ex. 2. The Court finds that an hourly rate of $340 for Ms. Sinnott's work is reasonable.

Attorneys Brandon Reeves, Vanessa Triplett, and Ivan Gutierrez each seek a rate of $270 per hour. Def.'s Mot. Fees & Costs 5. All three attorneys are associates at Miller Nash Graham & Dunn admitted to practice within the past three years, with Mr. Reeves having less than one years' experience. Def.'s Mot. Fees & Costs 5. In the most recent Oregon State Bar Economic Survey, the median hourly rate for attorneys with 0-3 years' experience working at private firms in Portland, Oregon was $235 and the 75th percentile rate was $250. Rite Aid argues that it is entitled to the inflated fees because the work conducted by the associates was a cost saving over the higher billing rates of Mr. Rubin and the total associate fees were roughly equal to the amount Hilfiker saved by Mr. Rubin *not* charging his normal $425 fee. Def.'s Reply Br. 4. The lodestar method asks for the reasonable rate of the attorney who actually completed the work; it does not allow one reasonable rate to justify another unreasonable one. Presumably, the work given to these associates did not require the expertise of a more experienced partner and would not justify his or her higher rates. Since Rite Aid provides no individualized justifications for the proposed higher rate, the reasonable rate for all three associates is $235 per hour.

 ii. *Paralegals*.

Paralegal Jessica Morton seeks hourly rates of $170 and $190.[4] Def.'s Mot. Fees & Costs 5. Rite Aid fails to support this request with expert declarations, relevant survey data, or even a

---

[4] The $170 hourly rate was charged until June 29, 2017, at which point the hourly rate was prospectively raised to $190. Sinnott Decl. ¶ 3.

Page 6 – ORDER ON FEES & COSTS

resume for Ms. Morton. The only evidence in support of the reasonableness of this rate is Ms. Sinnott's vague declaration. Therefore, as an initial benchmark, the Court looks to the National Legal Assistant Association's *2016 National Utilization & Compensation Survey Report* for a reasonable hourly rate. In the region labeled "Far West," which includes Oregon, Washington, California, Nevada, Hawaii, and Alaska, the mean billing rate for paralegal work in 2016 was $146 per hour. This is likely a generous benchmark given that larger cities like Los Angeles and San Francisco are included in the relevant regional calculation.

Rite Aid argues that Ms. Morton is entitled to the requested higher rates because of her 7 years of experience and expertise in electronic discovery. Def.'s Mot. Fees & Costs 5. It is true that Ms. Morton possess some relevant experience, and this experience is supported by Ms. Sinnott's declaration, but the mean billing rate for a paralegal with 6-10 years' experience in 2016 was $122 and Rite Aid omits any supporting documentation or specific information about Ms. Morton's training and experience. Sinnot Decl. ¶ 3. Other courts in the District have lowered applicants' requested paralegal rates absent specific evidence as to paralegals' training and experience. *See, e.g.*, *Investors VII, LLC v. BBP One LLC*, No. 3:16–cv–01595–SB, 2017 WL 706628, at *4 (D. Or. Jan. 30, 2017) (reducing paralegal rate from $195 and $135 to $125); *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1249 (D. Or. Oct. 1, 2013) (reducing paralegal rate from $170 to $125 based on 10 years' experience); *Whitworth v. Nat'l Enter. Sys.*, No. CV 08–968–PK, 2010 WL 1924505, at *11 (D. Or. April 21, 2010) (reducing paralegal rate from $130 to $90). The Court therefore finds that an hourly rate of $135 for all of Ms. Morton's work is more in line with the prevailing market rate in Portland, Oregon.

Paralegal Aimee Baxter seeks an hourly rate of $185 per hour. Def.'s Mot. Fees & Costs 6. As with Ms. Morton, the only evidence in support of this request is Ms. Sinnott's vague

declaration. Ms. Sinnott states that Ms. Baxter has "six years of experience as a litigation paralegal" and "12 years of experience in the legal field." Sinnott Decl. ¶ 3. Ms. Baxter's experience and expertise is substantially similar to that possessed by Ms. Morton—Rite Aid cites no specific evidence to support Ms. Baxter's inflated billing rate or to justify a difference from Ms. Morton's rate. The same hourly rate of $135 is therefore reasonable.

Finally, paralegal Lisa Conrad seeks an hourly rate of $150. Def.'s Mot. Fees & Costs 6. Rite Aid provides virtually no information to support Ms. Conrad's requested rate. Indeed, even Ms. Sinnott's declaration is silent as to Ms. Conrad's experience and expertise; instead, Rite Aid's brief simply states that Ms. Conrad possesses "years of experience." Def.'s Mot. Fees & Costs 7. Absent any supporting evidence or even an indication that Ms. Conrad's "years of experience" were as a paralegal, the Court finds that $55 is a reasonable hourly rate. *See Precision Seed Cleaners*, 976 F. Supp. 2d at 1249 (finding that $50 per hour was a reasonable rate in 2012 because record lacked information as to paralegals' education and experience).

**B. Hours.**

Hilfiker does not object to the hours billed by Rite Aid's attorneys. The Court nevertheless must review the submitted hours to determine whether Rite Aid's attorneys could have reasonably billed the same hours to a private client. *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993). Hours that could not reasonably be billed to a private client are not recoverable. *Id.* at 1203. "[E]xcessive, redundant, or otherwise unnecessary" hours are also not recoverable. *Id.* (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)). After careful review of the time entries, the Court finds that, on their face, the submitted hours are reasonable and therefore accepts all 388.1 hours reported by Rite Aid's attorneys and paralegals. *See* Sinnott Decl., Ex. 3 at 1; Ex. 4 at 1. Although the Court would expect a

seasoned attorney like Mr. Rubin to have delegated more research and writing tasks in this straightforward contract action, the excess hours—some of which reasonably could have been billed by cheaper associates—are mitigated by Mr. Rubin's lower-than-normal billing rate.

### C. Or. Rev. Stat. § 20.075.

The Court must also consider the sixteen factors set forth in Or. Rev. Stat. § 20.075(1)-(2). *Strawn*, 297 P.3d at 448-49. Hilfiker does not argue that the requested fee award should be reduced based on any of the unique factors listed in the statute (i.e., those not relevant to the foregoing lodestar analysis). The analysis under Or. Rev. Stat. § 20.075 incorporates the factors considered under the lodestar method, as well as the conduct of the parties, nature of the litigation, and any other circumstances which appropriately bear on the reasonableness of a requested fee award. *See* Or. Rev. Stat. § 20.075(1)-(2). The subsection 1 factors, which pertain to the conduct of the parties, neither weigh in favor of enhancing nor reducing the lodestar figure because the claims, defenses, and other conduct of the parties were reasonable in the case. *Id.* § 20.075(1). The unique subsection 2 factors, which pertain to the nature of the action, the type of client, and the results obtained, are also neutral, as this was not a complex matter, Rite Aid prevailed only after initially failing to have the action dismissed, and the record contains no evidence as to the length, burden, or other peculiarities of Mill Nash Graham & Dunn's attorney-client relationship with Rite Aid. *Id.* § 20.075(2). The lodestar figure is therefore appropriate.

III. <u>Availability and Amount of Costs</u>.

Finally, Rite Aid argues that, as the prevailing party, it is entitled to costs in the amount of $5,310.15. Def.'s Mot. Fees & Costs 3; Bill of Costs 1. Fed. R. Civ. P. 54(d)(1) and the express terms of Section 6.10 allow the prevailing party to recover its costs. Hilfiker does not contest that Rite Aid is the prevailing party, suggest that the reported costs are unreasonable, or

otherwise challenge the availability of costs. Although Section 6.10 contains no limitation on the type of costs recoverable, the costs sought by Rite Aid—fees of the Clerk ($400), docket fees ($45), and transcripts ($4,865.15)—are all taxable under 28 U.S.C. § 1920. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (holding that, even in diversity actions governed by state law, the award of costs is governed by federal law). The Court therefore awards Rite Aid its reasonable costs in the amount of $5,310.15.

## CONCLUSION

Based on the foregoing, Defendant is entitled to attorneys' fees in the amount of $119,612.00 and costs in the amount of $5,310.15.

IT IS SO ORDERED.

DATED this 30th day of April, 2018

/s/ Michael McShane
Michael J. McShane
United States District Judge